UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WEFUND4U, LLC, an Idaho limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ADRENALINE FUNDRAISING ASSOCIATION, a Texas limited liability company; JOHN DOES 1-20,<br><br>Defendants. | Case No. 2:22-cv-00385-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendant Adrenaline Fundraising Association, LLC's (Adrenaline) Motion for Summary Judgment against Plaintiff WeFund4U, LLC (WeFund4U) (Dkt. 37). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motions on the record and the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). Having reviewed the record, the Court grants Adrenaline's summary judgment motion.

### BACKGROUND

This case turns on a document entitled "Software as a Service Agreement" (Agreement) which is dated May 10, 2017 (Dkt. 1, Ex. A). The Agreement states in the recitals that it is "by and between" WeFund4U and Adrenaline (*id.* at 7). The Agreement's recitals further provide that Adrenaline "shall provide its representatives an opportunity to (a) opt [into] the [Agreement] and

**MEMORANDUM DECISION AND ORDER** - 1

(b) be bound by the terms of [the Agreement]" and that if a "representative opts in and Adrenaline notifies [WeFund4U], the representative shall become the 'Customer' as contemplated by [the Agreement]" (*id.*). WeFund4U acknowledges in the recitals that it "understands Adrenaline has no control over its individual representatives and that any dispute regarding performance under [the Agreement] shall be between [WeFund4U] and each Customer" (*id.*).

The terms and conditions following the recitals all relate to WeFund4U and "Customer," a defined term meaning an Adrenaline representative who has opted into the Agreement. For example, the Agreement states WeFund4U will provide Customer services, and it identifies Customer's obligations (*id.* at ¶¶ 1.1, 3). Importantly for this dispute, the Agreement further provides that Customer will only use WeFund4U services "to the exclusion of all other like services" (*id.* at ¶ 1.6). The Agreement's term is for two years with automatic renewals for up to four successive, two-year terms (*id.* at ¶¶ 10.1, 10.2). None of the Agreement's terms or conditions following the recitals mention Adrenaline (*see generally id.*).

In January 2022, Adrenaline entered into a Joint Venture Agreement (JVA) with Raise365 Development (Raise365) to create, develop, market, promote, and sell a fundraising mobile application (Dkt. 42-2 at 6). The JVA provides that Adrenaline "shall require its sales representatives that market[] and provide[] services under the [Adrenaline] association to download and utilize the application" (*id.* at 7). Related to this provision in the JVA, WeFund4U submits a form Adrenaline "Licensing Agreement" for Adrenaline's members (or junior members) (*id.* at 44). WeFund4U obtained this Licensing Agreement in discovery, and the Licensing Agreement provides that the licensee shall "[u]se Raise365 as [its] exclusive fundraising application" and "[c]onduct a minimum of $10,000 transactions in 2022 using the Raise365

**MEMORANDUM DECISION AND ORDER - 2**

application" (*id.*). Further, WeFund4U provides signed Licensing Agreements for two of Adrenaline's members (*id.* at 46, 48).

After learning about Adrenaline's JVA with Raise365, WeFund4U brought this action against Adrenaline and "John Does 1–20," who are unidentified Adrenaline members[1] (Dkt. 1). The crux of WeFund4U's complaint is that JVA's provision requiring Adrenaline's members to use Raise365 exclusively breached the Agreement. Specifically, WeFund4U alleges that the Doe Defendants breached the Agreement, and that Adrenaline tortiously interfered to cause that breach by requiring its members to use Raise365 exclusively.

Adrenaline moved for summary judgment (Dkt. 37). In support, Adrenaline submitted a statement of facts and Todd Price's declaration (Dkts. 37-2, 37-3). After WeFund4U opposed Adrenaline's motion (Dkt. 42), Adrenaline filed a reply brief; a supplemental statement of facts; and the declarations of Steve Berg and Chris Bennice, which attach over fifty additional pages of information (Dkts. 43, 43-1, 43-2, 43-3). Problematically, these documents are not responsive to WeFund4U's opposition but rather address issues and provide information about which Adrenaline was aware when it filed its summary judgment motion. *See Sky Capital Group, LLC v. Rojas*, No. 1:09-CV-00083-ELJ, 2010 WL 779561, at *3 n.3 (D. Idaho March 2, 2010) (noting reply affidavits are only proper where they are responsive to opposing party's response).

Neither the Local Rules nor the Federal Rules of Civil Procedure authorize Adrenaline to file a supplemental factual statement or declarations on reply. *See* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion."); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to declaration); Dist. Idaho Loc. Civ. R. 7.1(b) (limiting replies to rebuttal

---

[1] WeFund4U never establishes that Adrenaline's "representatives" are the same as its "members." For purposes of its analysis, the Court assumes they are.

matters). Further, Adrenaline did not seek leave to file these materials. Accordingly, the Court deems Adrenaline's supplemental factual statement and its declarations as untimely and does not consider them. Regardless, the Court's decision not to consider these materials does not prejudice Adrenaline because the Court grants its summary judgment motion.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must

set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

At the summary judgment stage, the trial court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## ANALYSIS

**1. Claim for Tortious Interference with Contract Against Adrenaline**

Adrenaline moves for summary judgment on WeFund4U's claim against it (Dkt. 37). That claim is for tortious interference with contract, i.e., Adrenaline allegedly interfered with the Agreement.[2] The Idaho Supreme Court has held that "one who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability." *Tricore Investments, LLC v. Estate of Warren through Warren*, 485 P.3d 92, 115 (Idaho 2021) (cleaned up). Under Idaho law, tortious interference with contract has four elements: (1) the existence of a

---

[2] Although WeFund4U entitles its claim against Adrenaline as one for "tortious interference with economic expectations," its allegations are based on the elements of tortious interference with contract (Dkt. 1 at 4). In its complaint WeFund4U cites *Tricore Investments, LLC v. Estate of Warren through Warren*, 485 P.3d 92, 115 (Idaho 2021), which addresses the elements for a claim for tortious interference with contract (Dkt. 1 at 4). Also, the parties analyze the claim under the elements for tortious interference with contract (Dkts. 37 at 8; 42 at 6-7). A claim for tortious interference with prospective economic advantage is a separate claim, and WeFund4U does not allege the elements to state such a claim. *See Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1081-83 (Idaho 2010) (identifying elements for tortious interference with economic advantage and for tortious interference with contract).

contract; (2) the defendant's knowledge of the contract; (3) intentional interference causing breach of the contract; and (4) an injury to the plaintiff resulting from the breach. *Id.* (cleaned up).

In this case, WeFund4U fails to establish the first element—the existence of a binding contract between it and any Customer with which Adrenaline could interfere. When interpreting a contract, a court begins with the document's language. *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010). Absent an ambiguity, the court must construe the document in "its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *Id.* "Whether a contract is ambiguous is a question of law." *Id.* "A contract term is ambiguous when there are two different reasonable interpretations, or the language is nonsensical." *Id.*

Here, neither party argues the Agreement is ambiguous, and the Agreement's plain language states that Adrenaline has "no control over its individual representatives" and that Adrenaline will only provide its representatives "an opportunity" to opt into the Agreement (Dkt. 1 at 7). Adrenaline does not purport to bind its representatives to the Agreement nor could it because nothing in the record supports the proposition that Adrenaline had the legal authority to contractually bind its representatives to a third party, such as WeFund4U.

Moreover, even if Adrenaline had the legal authority to contract on behalf of its representatives, WeFund4U has not submitted a signed copy of the Agreement. Although the last page of the Agreement provides a signature line for an Adrenaline representative, neither copy of the Agreement in the record is signed by Adrenaline (Dkt. 1 at 23; Dkt. 42-3 at 22). Meanwhile, Adrenaline disputes it executed the Agreement. Although Adrenaline does not raise this argument in support of its summary judgment motion, it states in its discovery responses that "Adrenaline has never had a contractual relationship with WeFund4U [because the Agreement] was never

signed by Adrenaline" (Dkt. 42-2 at 24). Absent an executed copy of the Agreement, there is no enforceable contract; consequently, no representative could agree to its terms.

Liberally construing WeFund4U's allegations favorably and assuming that the absence of a fully executed Agreement was not fatal to WeFund4U's claims, the Court addresses whether any Adrenaline representative entered into the Agreement with WeFund4U. The Court finds that, on this record, WeFund4U has not established that any Adrenaline representative is a party to the Agreement. Because the record is devoid of any facts showing Adrenaline had the legal authority to enter a contract on behalf of its representatives, a representative must have mutually assented to the Agreement to be bound by its terms. The formation of a binding contract requires mutual assent, meaning there must be a distinct understanding common to both parties for a contract to exist. *Gray v. Tri-Way Const. Servs., Inc.,* 210 P.3d 63, 69 (Idaho 2009). WeFund4U, however, does not present any evidence that any Adrenaline representative assented to the Agreement.

WeFund4U argues that "pursuant to the terms of the Agreement, any representative of Adrenaline who chose to use the WeFund4U software became bound by the terms of the Agreement, including the exclusivity provisions" (Dkt. 42-1 at ¶ 7). The Court disagrees. WeFund4U cannot contractually bind a representative who simply uses its services to a contract to which the representative has not assented. WeFund4U presents no evidence showing any representative assented to the Agreement.[3]

---

[3] WeFund4U submits one Customer addendum signed by David Wright, who is identified as "Board Member" but without reference to any entity. The signature line does not identify on whose behalf Wright signed or what authority he had. The record elsewhere identifies Wright as a "Manager" of Adrenaline but not as a board member. Neither party addresses this document. Todd Hamill claims Wright is an Adrenaline member who opted into the Agreement, but as explained herein Hamill's declaration, at most, only identifies Adrenaline representatives that also used Raise365; he does not lay the foundation to establish any Adrenaline representative assented to the Agreement's terms.

**MEMORANDUM DECISION AND ORDER - 7**

For example, WeFund4U does not submit any evidence that any representative responded to "the link to opt in" which WeFund4U sent to Adrenaline (Dkt. 42-2 at 31). WeFund4U does not submit any evidence that Adrenaline notified WeFund4U that a representative had opted into the Agreement, as the Agreement contemplates (Dkt. 1 at 7). Indeed, nothing in the record indicates any Adrenaline representative ever received notice of the Agreement or was otherwise aware of its terms.

WeFund4U's reliance on Adrenaline's discovery that certain representatives used the services of both WeFund4U and Raise365 does not establish those representatives assented to the Agreement. Likewise, that Adrenaline may have had a license agreement with its representatives requiring them to use Raise365's services does not establish assent to the Agreement with WeFund4U. Accordingly, the Court concludes that WeFund4U has failed to establish the existence of any contract with which Adrenaline could have interfered. This failure is fatal to WeFund4U's tortious interference with contract claim against Adrenaline, and the Court grants Adrenaline's summary judgment motion.

**2. Breach of Contract Against Doe Defendants**

WeFund4U's failure to establish the existence of a contract is likewise fatal to its breach of contract claim against the Doe Defendants. Moreover, WeFund4U has never amended its pleading to substitute real parties for the Doe Defendants. The Ninth Circuit permits naming a Doe defendant at the outset as a provisional device but only until discovery reveals the defendant's identity. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). For example, naming an unknown defendant may be used to prevent a statute of limitations from running, but once the plaintiff identifies the defendant, then the plaintiff must amend its complaint and serve the defendant. O'Connor's Federal Rules, Civil Trials Ch. 2-B § 2 (Parties) (2025 ed.). When a plaintiff fails to

timely identify a Doe defendant, Rule 21 of the Federal Rules of Civil Procedure provides a mechanism by which to drop the Doe defendant from the case, which a court may do if a plaintiff fails to timely identify that Doe defendant. *See, e.g.*, *Lemons v. Am. Ass'n of Neurological Surgeons, Inc.*, 782 F. Supp. 3d 913, 924 (E.D. Cal. 2025) (dismissing claim due to inclusion of Doe defendants); *Tucker v. City of Philadelphia*, 679 F. Supp. 3d 127, 133 n.2 (D.N.J. 2023) (dismissing Doe defendants and explaining rationale).

Here, WeFund4U has had ample opportunity to identify the Doe Defendants. Indeed, WeFund4U has identified forty-three Adrenaline representatives who used WeFund4U (Dkt. 42-3 ¶ 5), but it never moved to amend to add any of them as a defendant. Presumably, if WeFund4U had learned the identity of any breaching representatives, it would have moved to amend its complaint. Because the amendment deadline has passed and WeFund4U has not named any real defendant in place of the Doe Defendants, the Court dismisses WeFund4U's breach of contract claim and all the Doe defendants under Rule 21.

## ORDER

1. The Court **GRANTS** Adrenaline Fundraising Association, LLC's (Adrenaline) Motion for Summary Judgment (Dkt. 37).

2. The Court sua sponte DISMISSES the Doe Defendants under Rule 21 of the Federal Rules of Civil Procedure with prejudice.

3. The Court will enter a separate judgment.

DATED: September 29, 2025

Amanda K. Brailsford
U.S. District Court Judge